UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE
CASE NO. 3:05-CV-00820-JGH

LEXUS REAL ESTATE GROUP, INC., et. al.          PLAINTIFF
n/k/a Depot Land Corp., Inc.

v.    **DEFENDANT'S REPLY TO PLAINTIFFS'
RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND MOTION TO STAY**

BULLITT COUNTY BANK          DEFENDANT
n/k/a PBI Bank, Inc.

\* \* \* \* \* \* \* \*

The Defendant, Bullitt County Bank n/k/a PBI Bank, Inc., by counsel, tenders this Reply Memorandum to Plaintiffs' Response to its Motion for Summary Judgment and Motion to Stay.

I.    **INTRODUCTION**

The Plaintiffs, H. Jay Snider, now deceased, and Lexus Real Estate Group, Inc. (hereinafter "Lexus"), an entity whose sole shareholder and officer was H. Jay Snider, claim in their Response there are issues of fact which preclude summary judgment on Plaintiffs' claims. The Plaintiffs also contend the Bullitt County Bank never properly served Plaintiffs in the underlying Indiana Clerk Circuit state court case action involving the same parties and that the trial court lacked jurisdiction and its Order is not entitled to res judicata effect here. Plaintiffs' Response to Bullitt County Bank n/k/a PBI Bank, Inc.'s Motion for Summary Judgment herein is replete with misstatements and inartful attempts to distinguish controlling law. The Bullitt County Bank n/k/a PBI Bank, Inc. is entitled to summary judgment in its favor dismissing all of the Plaintiffs' claims.

II.    **SUPPLEMENTAL STATEMENT OF THE CASE.**

In addition to the facts set forth in Bullitt County Bank n/k/a PBI Bank, Inc.'s Memorandum in Support of Motion for Summary Judgment (hereinafter "Memo. Supp. Motion for SJ") at pages 2-13, the following facts are provided.

    A.    **Supplemental Facts Regarding the Petition Submitted by Lexus and Mr. Snider Before the Clark County Planning Commission.**

C. Gregory Fifer, an attorney with the law firm of Applegate & Mull, represented Lexus Real Estate Group, Inc., H. Jay Snider, and Philip Glidewell before the Clark County Planning Commission regarding the vacation of the plat of Norwestwood Subdivision and approval of the subdivision to be known as Forest Green. On June 20, 2001, Mr. Fifer filed Petitions on behalf of Petitioners, Jay Snider, Lexus, Philip Glidewell, and Emerald Development, Inc. to Vacate the plat of Norwestwood Subdivision and to resubdivide and replat this property with the Petitioners, including Lexus and Snider, individually signing the Petition. (See Exhibits 13 and 14 to Memo. Supp. Motion for SJ). The Petition to Vacate Norwestwood Subdivision and to Resubdivide and Replat the Property provided in part:

> "7. Jay Snider is the president and sole shareholder of Lexus and is a resident of Brown County, Indiana. ... It is intended by Snider and Glidewell either (i) that their option on their Emerald property will be assigned to Lexus or (ii) that they transfer the Emerald property to Lexus subsequent to taking title at closing...."
>
> 10. The circumstances and reasons prompting this petition are as follows:
>
>    a. The original developer of Norwestwood Subdivision and Emerald have yet to construct the roads and other public improvements as shown on the Plat. The original developer relinquished all of his interest in the Plat and the property described in Exhibit "A" to Emerald. Emerald does not presently have the ability to complete such improvements.
>
>    b. Snider and Glidewell are ready, willing, and able to promptly exercise their option to purchase the Emerald Property, and to have Lexus construct the public improvements as shown on the proposed plat of Section 1 of Forest Green filed separately herewith, provided only that this petition to vacate the Plat and to re-plate the Emerald Property is approved without imposition of objectionable conditions or commitments by the Plan Commission in a reasonably prompt manner.
>
>    c. Snider, Glidewell, and Lexus propose to change the existing name of the subdivision and the streets within the Plat in order to disassociate themselves with the well-publicized difficulties of the original developer and Emerald in completing the public improvements and developing the project.
>
> 11. At hearing on this petition before the Plan Commission, petitioner will

present competent evidence establishing that:

 a. That the conditions in property in the Plat and subject to the Covenants have changed so as to defeat the original purpose of the Plat and the Covenants;

 b. That it is in the public interest to vacate all of the Plat and all of the Covenants; and

 c. That the value of that part of the land in the Plat not owned by Emerald will not be diminished by the proposed vacation of the Plat and the Covenants. [Exhibit 14 to Memo. Supp. Motion for SJ]

As a part of the Petition to Vacate the Plat of Norwestwood and Resubdivide and Replat the Property, a copy of the Norwestwood Protective Covenants was tendered, including paragraph 18 that specifically provided:

 18. No individual sewage disposal system shall be permitted on any lot unless such system is designed, located and constructed in accordance with the requirements, standards, and recommendations of local public health officials. Approval of such system and installation shall be obtained from such authority before occupancy of residence.

As a part of the Petition to Vacate the Plat of Norwestwood and Resubdivide and Replat the property into a subdivision to be known as Forest Green, a document entitled "Restrictions of Forest Green" was also tendered to the Planning Commission. Paragraph 17 of that document provided in part that:

 17. SEPTIC SYSTEMS, WATER SYSTEM SUMP PUMPS.

 All buildings erected on the lots shall be connected to septic systems designed and permitted in accordance with all state and local rules and regulations.

Lexus, Mr. Snider, and Glidewell knew at the time they purchased the property that the subdivision had no residences either under construction or completed on any of the lots and therefore, "[n]o individual sewage system" could have been approved in accordance with the covenants of Norwestwood and the ultimately approved Restrictions of Forest Green. (See Exhibits 13-15 to Memo. Supp. Motion for SJ); see also **Exhibit 1** hereto compiled pages Depo. P. Glidewell at 40-45, 67-77).

## III. THE STANDARD OF LAW FOR SUMMARY JUDGMENT.

The Plaintiffs' Response provides an incomplete standard of the applicable law when a Defendant moves for summary judgment. Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party is able to establish that the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also Gutierrez v. Lynch, 826 F. 2d 1534, 1536 (6th Cir. 1987), citing, Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In considering whether summary judgment is appropriate, a court must resolve all ambiguities and draw reasonable inferences against the moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[N]ot every issue of fact or controlling inference presents a genuine issue of material fact." Street v. Bradford & Co., 886 F. 2d 1472, 1477 (6th Cir. 1989).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). "The movant must carry the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." Barnhart v. Pickrel Schaeffer & Ebeling Co., 12 F. 3d 1382, 1389 (6th Cir. 1993). The test is then whether the party bearing the burden of proof has presented a jury question as to each element in the case." Hartsel v. Keys, 87 F. 3d 795, 799 (6th Cir. 1996).

## ARGUMENT

## IV. THE PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA.

Lexus and Mr. Snider incorrectly claim that the trial court lacked jurisdiction in the related Indiana Clark Circuit Court case, Bullitt County Bank v. Lexus Real Estate Group, Inc. and H. Jay Snider, No. 10C01-0408-MR-00505, as the Bullitt Circuit Court never properly served Plaintiffs. Plaintiffs erroneously contend the Indiana default judgment is not entitled to res judicata effect.

Plaintiffs also claim the Indiana Court of Appeals in upholding the trial court's judgment held that the Bullitt County Bank did not properly serve Lexus and Mr. Snider, but the court allowed the judgment to stand applying an abuse of discretion standard. See Plaintiffs' Response to Motion for Summary Judgment at 2-7.

In affirming the trial court's entry of default judgment, the Indiana Court of Appeals twice rejected as meritless the same argument advanced here that service of process was insufficient. As unanimously concluded by the Indiana Court of Appeals in its Memorandum Opinion, the Court stated:

> BCB [Bullitt County Bank] asserts that it perfected service upon Appellants [Lexus and Jay Snider] via Jacobson [their attorney] pursuant to Indiana Trial Rule 4.1(A)(4).... (See IND. Trial Rule 4(A)...authorizing service "upon an individual or an individual acting in a representative capacity by...serving his agent as provided by rule, statute, or valid agreement." [Language added for clarity.]

Exhibit 6 to Memorandum in Support of Motion for Summary Judgment, Court of Appeals of Indiana Memorandum Opinion, at p. 9 n. 10.

The Court of Appeals of Indiana further stated that:

> Notwithstanding BCB's reliance on Trial Rule 4.1(A)(4), Appellants do not mention Trial Rule 4.1(B) let alone contend that BCB failed to comply therewith...consequently, Appellants' [Plaintiffs] have waived any argument on this point.

The Indiana Court of Appeals concluded its analysis of the service of process issue by citing its decision in Smith v. Johnson, 711 N.E. 2d 1259 (In. App. 1999). In its analysis the Court stated:

> In this case, BCB notified Jacobson [Lexus and Jay Snider's Attorney] albeit after Jacobson contacted BCB - that a lawsuit was pending against Appellants two months after it filed suit and nearly five months before it sought default judgment. **Given these circumstances, BCB fulfilled its burden under Smith to give Jacobson "notice of the lawsuit prior to seeking default judgment". Id., at 1264.** Smith does not relieve the Defendant's attorney of the burden of exercising due diligence. Once BCB notified Jacobson of the lawsuit, she had five months to enter an appearance, file an answer and check the trial Court's docket on Appellant's behalf. Jacobson did none of those things. Consequently, we cannot say that the trial court abused its discretion in reinstating the default judgment and judgment and decree of foreclosure against Appellants. [Language added for clarity]. [Emphasis added].

See Exhibit 6 to Memo. Supp. Motion for SJ, Indiana Court of Appeals Opinion, at 11-12.

Proper service was made by the Bullitt County Bank upon Lexus and Mr. Snider by serving a copy of the Complaint and Summons by first class mail and by fax upon their legal counsel by agreement and in compliance with Indiana Trial Rule 4.1(A)(4). Due process was satisfied to confer personal jurisdiction over Lexus and Mr. Snider.

As the Indiana trial court had personal jurisdiction over Lexus and Jay Snider, these parties lost their right to assert, in an independent action any claim deemed to have been a compulsory counterclaim. Plaintiffs contend that the res judicata claim in Duncan v. Peck, 252 F. 2d 1135 (6th Cir. 1985), is similar to this case. See Plaintiffs' Response at 4. The facts in Duncan regarding personal jurisdiction are vastly different than in this case and jurisdiction in that case depended solely on service by publication. Unlike in Duncan, in the subject case, Plaintiffs' counsel were properly served by agreement with a copy of the Complaint and Summons. Plaintiffs counsel have never claimed that they did not receive a copy of the Complaint and Summons.

Under both Indiana and Kentucky law, failure to raise a compulsory counterclaim in an action bars raising such a claim in an independent action if the initial action proceeded to judgment. See Lear Resources, Inc. v. Uland, 485 N.E. 2d 134, 137 (Ind. App. 1 Dist. 1985); Ratcliff v. Citizens Bank of Western Indiana, 768 N.E. 2d 964, 967-71 (Ind. App. 2002); Egbert v. Curtis, 695 S.W. 2d 123, 124 (Ky. App. 1985); Cianciolo v. Lauer, 819 S.W. 2d 726, 727 (Ky. App. 1991).

Therefore, as personal jurisdiction over the Plaintiffs existed, the Indiana Clark Circuit judgment should be given res judicata effect in this case and Plaintiffs are barred from attempting to raise their claims asserted here which they were required to raise in the Indiana foreclosure case as Plaintiffs cannot split their cause of action. See also Fed. R. Civ. P. 13(a).

## V. THE BANK'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFFS' FRAUD CLAIMS.

Without citing any authority from the Sixth Circuit, Plaintiffs claim the Bullitt County Bank overstates the effect of the series of merger and integration clauses in the Notices of Final Agreements. Plaintiffs claim boiler plate integration clauses do not preclude fraud claims under

6

Kentucky law, and Plaintiffs contend there are issues of fact with regard to the fraud claims. See Plaintiffs' Response to Motion for Summary Judgment at 7-12.

Plaintiffs argue that the series of integration clauses present with regard to each of the subject loans merely provide for "there are no oral agreements between the parties and that the final loan agreement may not be contradicted by oral agreements or understandings" and that the integration clauses are silent as to oral agreements or understandings that do not contradict the loan agreement. This narrow reading of the subject merger and integration clauses present in each one of the Notices of Final Agreement is incorrect. The terms agreement and understanding are synonymous and each of the subject integration and merger clauses in the Notice of Final Agreement expressly stat "[t]here are no oral agreements between the parties" and "[t]he written agreement may not be contradicted by evidence of any prior, contemporaneous or subsequent oral agreements or understandings of the parties."

This case is substantially similar to this Honorable Judge's Opinion in Papa John's International, Inc. v. Dynamic Pizza, 317 F. Supp. 2d 740 (W.D. Ky. 2004), where this Court recognized and upheld the effect and the efficiency of similar integration clauses. Plaintiffs have not tried to rebut the that Mr. Snider and his company, Lexus, were experienced real estate developers who were capably represented by experienced real estate attorneys. Snider also had substantial experience running septic treatment plants and Plaintiffs fully understood when they filed their Petition to Replat the subject subdivision that the subject property was not on sewers and that individual septic systems for each house would need to be individually approved by local authorities at the time the houses were built. See Supplemental Facts contained herein at pages 3 - 4.

This Court in Papa John's International, Inc., 317 F. Supp. 2d 74, specifically considered the counterclaims made by Defendants alleging fraudulent inducements where the parties had executed merger and integration clauses in a series of franchise agreements. This Court quoted this Court's Opinion as precedent in KFC Corp. v. Darsam Corp., 543 F. Supp. 222 (W.D. Ky. 1982), another case upholding a merger and integration clause to bar alleged oral misrepresentations as follows:

7

> At some point, a court must apply the contractual agreements of two sophisticated parties. Defendants presented evidence which sought to establish a separate set of oral understandings apart from the written agreements and the court refused because 'such a clause makes clear the intention of both parties that the agreement was to be the complete and exclusive statement of terms."

Id. at 744-45.

This Court in Papa John's International, Inc., also recognized that the parties executed a series of contracts with each containing a merger and integration clause and that Defendants claimed a pattern of alleged oral misrepresentations and this Court gave contractual effect to the repeated expression of sophisticated parties claiming the Defendants could "hardly be that [they] relied to their detriment on Papa John's predictions about future events or that Papa John's had superior knowledge." Id. 317 F. Supp. at 747-48. This decision was not premised on the nature of franchise agreements. Rather, the Court focused on the contractual agreements of sophisticated parties who agreed to certain terms of an agreement.

The parties agreed to the merger and integration clauses as part of their agreements where Plaintiffs structured the deal. Plaintiffs cannot reasonably claim they purchased this development based upon the self-serving statements of two of Mr. Snider's sons who claim to have been present at a pre-closing meeting between Mr. Darst and their dad. These sons stand to profit under their father's Will. See **Exhibit 2**, copy of Jay Snider Will. Therefore, summary judgment should be granted as a matter of law dismissing Plaintiffs alleged fraud claims.

### VI. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFFS' ALLEGED COMMON LAW BREACH OF FIDUCIARY DUTY CLAIM.

In their Response at pages 12-16, Plaintiffs contend that a bank assumes a fiduciary obligation to the borrower when a bank induces a borrower into a transaction and financially benefits from a transaction at the expense of a borrower. As the principal authority for this claim, Plaintiffs provide an incomplete citation to an authority "Lender Liability and Banking Litigation" that fails to contain an author or publication date. This citation makes it impossible to check the source for accuracy or comparison. In any event, none of the cases cited by Plaintiffs contain facts similar to the subject case. For the reasons previously stated, Plaintiffs signed Notices of Final

Agreement containing integration and merger clauses which the parties executed agreeing that no oral agreements or representations had been made and that the loan agreements could not be contradicted by alleged oral agreements or understandings of the parties.

Following the general rule of Kentucky law, the relationship between the Bullitt County Bank and Plaintiffs did not impose a fiduciary duty of disclosure upon the bank. Further, the facts of this case show that Plaintiffs conducted their own due diligence of the subject property meeting on their own several times with the prior owner of the property. Snider and Lexus were experienced Indiana subdivision developers who also had managed sewage treatment plants.

The Plaintiffs undisputedly found the Forest Green property on their own as Mr. Glidewell testified. Lexus and Mr. Snider and their attorneys also structured the purchase of the subject property voluntarily purchasing the property directly from Emerald Development upon a Quitclaim Deed after initially entering into an Option Agreement on May 29, 2001 and then filing a Petition to Vacate the existing plat and to establish new covenants for the Forest Green subdivision. Plaintiffs only agreed to close on this property after the Clark County Planning Commission allowed them to save a substantial sum of money in vacating a required covenant to build a long entranceway to the property. Plaintiffs voluntarily signed Notices of Final Agreement between the parties which included an integration clause agreeing the written loan agreements controlled and that there were no oral agreements between the parties. Further, Plaintiffs in filing their Petitions to Vacate the prior Plat and Replat the property with new covenants knew the property was not on sewers and that when each house was built approval for individual septic systems must be given by local authorities at that time. See Memo. Supp. Motion for SJ Exhibits 1 through 16 including 14-16. See also Supplementary Facts provided herewith.

There are no special circumstances present in this case showing a fiduciary duty relationship existed between the Bullitt County Bank and Plaintiffs. Further, the Plaintiffs have not met their burden of showing a genuine issue of material fact on each element of their claims. Plaintiffs allegations of fraudulent oral statements are barred by the series of contracts signed; each containing integration clauses expressly providing there were no written oral agreements. Summary judgment

should be granted.

## VII. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFFS' ALLEGED ANTI-TYING CLAIM.

Plaintiffs attempt to offer support for their anti-tying claim by alleging that in a telephone call made by Jay Snider to Mr. Darst, Darst told Mr. H. Jay Snider that the Bullitt County Bank "would not agree to extend financing to Lexus for the sewage treatment plant unless he agreed to refinance his home with Bullitt." Plaintiffs' Response to Bank's Motion for Summary Judgment at 17. H. Jay Snider is dead and certainly cannot testify about this claim. In support of this alleged statement, Plaintiffs claim Israel Snider, his son, could hear Jay Snider's half of the conversation on the telephone and that after Jay got off the telephone with mr. Darst, Jay immediately told Israel the conditions Bullitt put on the additional financing. Plaintiffs incorrectly claim this statement is admissible evidence pursuant to the present-sense hearsay exception and that this case is supported by the Sixth Circuit's Opinion in United States v. Perkins, 187 F. 3d 639, 1999 WL 506980 (6th Cir. 1999). See Plaintiffs' Response to Bank's Motion for Summary Judgment at 17.

Statements constituting hearsay are admissible only if they fall within a statutory exception to the hearsay rule. Federal Rule of Evidence 801(c) provides:

> "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Furthermore, under Federal Rule of Evidence 403 evidence, although relevant, may be excluded if its probative value is substantially outweighed "by the danger of unfair prejudice." In this context, prejudicial refers to the undue consequence of "unfair" prejudice such as to lead a jury to an emotional or irrational decision. See Ballou v. Henri Studios, 656 F. 2d 1147, 1154-55 (5th Cir. 1981); United States v. Hands, 184 F. 3d 1322, 1328 (11th Cir. 1999). Rule 403 is to be applied in tandem with other Federal Rules under which evidence would be admissible unless pre-empted by a particular rule. S. Saltzburg, Federal Rules of Evidence Manual, Vol. 1 at §403.02[16] at 403-48 (9th Ed. 2006).

According to Plaintiffs, Mr. Darst's statements to Jay Snider on the telephone are

admissions. Fed. Rule Evid. 801(d)(2). Plaintiffs claim Jay Sniders conversations with Israel Snider are admissible as a present sense impression. See Plaintiffs' Response to Bank's Motion for Summary Judgment at 17. Federal Rule of Evidence 803(1) known as the present sense hearsay exception, provides: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." In order to fall within this exception to the hearsay rule, three requirements must be met (1) "[t]he declarant must have personally perceived the event described ...; [t]he declaration must be a simple explanation or description of the event...; and (3) [t]he declaration and the event must be contemporaneous." Weinstein's Federal Evidence Vol. 5 §8.03[1] at 803-13 and 14 (2006).

In Saltzburg, Federal Evidence Manual, Vol. 4 at §803.02[2][6], the authors of this respected treatise opined that "[m]ost Federal Courts... have read a corroboration requirement into Rule 803(1)." The authors stated "[t]he corroboration can be found in the in-court testimony of the declarant, or testimony of another person who also saw some of what the declarant saw, or simply circumstantial evidence that the event occurred." The authors concluded that "[i]n the absence of some proof other than the hearsay statement itself, a Trial Judge should conclude that the proponent has failed to prove by a preponderance of the evidence that the evidence occurred the way the declarant described it. Otherwise, the admissibility requirement is proved solely through the hearsay statement itself" which is not allowed, for example, with hearsay coconspirator statements. The authors concluded some corroboration must be provided for the statement to be admissible under Rule 803(1). Id. at 803 - 15 and 16.

For example, in In Re Japanese Electronic Products Antitrust Litigation v. Matsushita Elect. Indust. Co., Ltd., 723 F. 2d 238, 303 (3d Cir.), rev'd on other grounds, 475 U.S. 574 (1986), the Court stated that the exception for present sense impressions is founded on "contemporaneity of observation and impression guarantee against misrepresentation and defective memory" and that the "rule is generally understood to require that, in addition to contemporaneity, there must be some corroborating testimony." Id. at 303. Likewise, in both United States v. Perkins, 187 F. 3d 639, 1999 WL 506980 (6th Cir. 1999) and United States v. Blakey, 607 F. 2d 779, 786 (7th Cir. 1979), the

courts focused on the existence of corroborating evidence in upholding the trial court's rulings to admit evidence under the present sense hearsay exception.

In Perkins, 1999 WL 506980 at p. 4 of its Opinion, the Sixth Circuit focused on the fact that both the declarant of the telephone repeated statement and the witness who offered the statement testified at trial were available for cross-examination and further there was other corroboration available from the evidence at trial. The Perkins Court added that defense counsel had ample opportunity to cross-examine the declarant and the witness who offered the hearsay and therefore, the Defendant could not show any of his substantial rights were affected.

The facts of this case are vastly different than in Perkins. First, the declarant, Jay Snider, is dead and cannot be cross-examined about his alleged statement. Second, there is no corroborating evidence to support Israel Snider's self-serving claim that his father told him this multiple hearsay statement. In the subject case, this alleged statement is inadmissible hearsay. We do know, however, that Don Mucci, who loaned money to Snider on his Shelbyville residence and other properties, testified in his deposition that in late 2002 he called Jay Snider several times to discuss Snider's being substantially behind in payments, including the Shelbyville residence Note. Jay Snider would not return Mr. Mucci's telephone calls. Jay Snider was in default and needed to move his residence loan to another loan source. (See **Exhibit 3** hereto; R. 52 Depo. Don Mucci at 11, 17-23 and 31-32). At his deposition, Mucci was asked by Plaintiffs' counsel:

"Q:  "[S]ometime in around 02 period of time, he [Jay Snider] ran into trouble and was not keeping up with his loans; is that correct?

A:  Yeah. And the tough part was because of the way I was getting paid, I didn't – you know, when I say the way I was getting paid, it's when he would sell something, he would bring me a check and let's get current on all of these. I didn't care. I ran a pretty loose – ... I didn't report to the credit bureaus .... It's just – but it was when he quit calling me back, that's when I got uneasy."

R. 52 Depo. Don Mucci at 31-32.

All of the necessary elements to an anti-tying claim are not present. There is no admissible evidence that the subject loan was a condition or requirement that Mr. Snider get a loan on his house at all. The proof shows Mr. Snider let his prior house loan (a 12 per cent interest rate loan) go into

default and that he sought a new loan (at 7 per cent per annum) from the Bullitt County Bank and orally requested that a portion of the loan proceeds ($100,000.00) be disbursed to pay off Lexus' overdrafting of its bank account on the Forest Green property. The bank deposited $100,000.00 in Lexus' account as instructed by him and sent written proof to him by sending a monthly bank statement to Mr. Snider, Lexus' sole shareholder, sole officer, and sole agent of process, at his residence in Shelby County, Kentucky. (See **Exhibit 4**, 12/31 Lexus Bank Statement with 12/31/02 deposit slip and Affidavit of July McCubbins). The Disbursement Request and Authorization Form regarding this loan specifically provided that the "primary purpose of this loan" is for business. (See **Exhibit 6**, Disbursement Request and Authorization). Because the loan was not made on the condition or the requirement, there can be no anti-tying claim.

Second, the case of Kenty v. Bank One, Columbus N.A., 92 F. 3d 384 (6th Cir. 1996), cited by Plaintiffs for the proposition that requiring a borrower to provide a specific collateral is "unusual" and not permitted, simply is an erroneous interpretation of that case. The Kenty Court found no impermissible anti-tying and affirmed the trial court's dismissal of this claim. Id. at 395. As Mr. Shober has opined in his Affidavit (**Exhibit 5**) hereto, "It is common for individuals to borrow on the equity of their homes to inject cash into their businesses." In fact, this is a regular practice of the Small Business Administration in providing guarantees on small business loans. To suggest this is a violation of federal anti-tying provisions is inaccurate." The proof shows there is no credible proof that the subject home loan was unusual in the banking industry and therefore, another critical element of this alleged claim is missing. WHEREFORE, summary judgment dismissing this claim is proper.[1]

---

[1] According to Israel Snider, Mr. Darst of the Bullitt County Bank made the statement that the Bullitt County Bank could force Mr. Marshall to sell the Forest Green property by using a home mortgage as leverage. To the contrary, Philip Glidewell, Snider's initial partner on the Forest Green venture testified that neither of Jay's sons, Israel or Christian, were involved in the purchase of the Norwestwood property from Emerald. (**Exhibit 1**; R. 51 Depo. P. Glidewell at 47-49). Glidewell also testified that before he ever met with anyone at the Bullitt County Bank, he had a meeting with Jay Snider, Alan Applegate and Mr. Marshall where Mr. Marshall expressed that he was in financial trouble and was happy to get out of this project for a $100.00 option and paying off the Emerald loans. (**Exhibit 1**, R. 51 Depo. P. Glidewell at 23-31).

## VIII. CONCLUSION.

The Plaintiffs claims are barred by the doctrine of res judicata based upon the reinstatement of the default judgment in the related Indiana Clark Circuit action and where Plaintiffs are estopped or barred pursuant to Fed. R. Civ. P. 13(a) from attempting to file claims herein which they were required to raise by compulsory counterclaim in the Indiana action.

Further, based upon the forgoing reasons raised in its Motion for Summary Judgment, the Plaintiffs alleged fraud, anti-tying and breach of fiduciary duty claims should be dismissed as a matter of law. Finally, for the reasons previously advanced and where Plaintiffs have no viable anti-tying claim, the Court should decline to exercise jurisdiction and to dismiss Plaintiffs alleged common law fraud and breach of fiduciary duty claims as set forth in Section V and VI of the bank's Memorandum in Support of Motion for Summary Judgment. Alternatively, the Court should stay this action pending a final judgment in the related Indiana foreclosure case.

Respectfully Submitted,

*[signature]*

JOHN F. CARROLL by William F. Stewart
Porter & Associates
162 South Buckman Street
P.O. Box 159
Shepherdsville, Kentucky 40165
Telephone (502) 543-2296/955-6034
*Counsel for Bullitt County Bank n/k/a PBI Bank, Inc.*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following person(s) this 2nd day of February, 2007:

**Eric W. Richardson**
**Barbara Bison Jacobson**
Vorys, Sater, Seymour & Pease LLP
221 E. Fourth Street
Suite 2000 Atrium Two
P.O. Box 0236
Cincinnati, Ohio 45202-0236

*[signature]*
John F. Carroll by William F. Stewart

14